Good morning, Your Honors. My name is Bob Currie. I represent Jose Bonilla, the appellate in this particular matter. Can you speak up a little? Is this better, Your Honor? So far. Okay. Thanks. Preliminarily, I think that most of the issues that I wish to address were raised and discussed in the briefs that were filed. My comments are really directed only to the letter which was filed pursuant to Federal Rules of Appellate Procedure, Rule 28, by the Respondent on September 29, 2010. They're addressed in – wish to address that letter in two respects. One, with regard to some of the factual statements in it, which, at least in our view, are somewhat incorrect. In the third paragraph of that letter, it indicates that Mr. Bonilla acknowledged that he asked his counsel prior to pleading guilty about the deprecation consequences of a guilty plea. In fact, he did not, and that's set forth in the briefs. Two, the – Well, I thought that through his wife – His wife – Through his wife, he inquired of counsel. That's correct, Your Honor. He got no answer. His wife had inquired of the public defender's office and of the public defender's office's investigative unit and had never received a response. I mean, the case is sort of a classic mix-up in the sense that appellant's counsel, a public defender at that time, did not know that he was not a citizen and consequently proceeded as if he was. And Mr. Bonilla, and I went to some length in the brief to set that forth, has some disability stress problems and is hardly an individual who conducts himself in a very verbal fashion. The second – the second factual statement I wish to bring the Court's attention to was the letter indicates Mr. Bonilla asked no questions regarding the deprecation consequences of his plea. Of course he didn't. That is the whole basis of Padilla v. Kentucky. The issue was not raised. If it was raised, there would have been a discussion in all likelihood. The third standard in the letter, the Government in its final sentence indicates Mr. Padilla cannot meet the standard for allowing withdrawal of his plea or the prejudice standard necessary to find his counsel ineffective. I only bring that to the Court's attention simply because it is the whole thesis of our brief that Mr. Bonilla is under no obligation to set forth prejudice. That is not what's applicable in a pre-sentence withdrawal of plea situation. The standard is, quite frankly, whether the failure of advice in this situation could have at least plausibly motivated a reasonable person in Mr. Bonilla's position not to have pled guilty had he known about the grounds for withdrawal of the plea. In this instance, the record is absolutely clear. Mr. Bonilla indicates that had I known I was going to be deported, I certainly wouldn't have pled. The other issue I wish to bring to the Court's attention is appended to this letter, and this letter references the case of United States v. Mayweather, which was decided by a panel on September 27, 2010. That particular case, in our view, is not applicable to the issues presented before the Court in this case. The issue presented before the Court in our case is whether, as a — because of the failure to advise of the immigration consequences, which is the ineffective assistance of counsel claim, Mr. Bonilla should be allowed to withdraw his plea. Mayweather is involved with — Mayweather specifically does not decide that issue, and in the final page of the decision, I believe it's page 8, indicates that the ineffective assistance of counsel claim will, in fact, be handled pursuant to the plea agreement, pursuant to 2255. Secondly, I wish to stress two issues where I think Mayweather is just totally inapplicable to the situation before the Court and it should not be considered by the Court. First, under the facts of the case, Mayweather was an individual who was an active participant where the Court specifically found that he indicated that he knew about the issue. Our case, Mr. Bonilla, in his declaration, indicates that he did not know about the deportation consequences, so that you have two specific factual instances which totally define the opposite of situations in which Mr. Bonilla finds himself before the Court. Mayweather was not directly about the question of what information he should have gotten about immigration status, right? It was only about a suppression hearing. That's correct, Your Honor. It is a failure to make a motion. So it wasn't directly about the rule of Padilla with regard to the obligation to provide this information, the affirmative obligation to provide this information? I'm sorry, Your Honor. Mayweather was not directly about the rule in Padilla about the affirmative obligation to provide such information. That's correct, Your Honor. It, in our view, is an opposite. If, Your Honor, please, I would like to. Thank you, counsel. Thank you, Your Honor. We have a question from the government. Good morning. May it please the Court. I'm Amber Rosen from the United States. There really are two issues before the Court this morning. The first is whether the district court abused its discretion in denying defendants' motion to withdraw his plea. And the second is whether defendants' counsel was ineffective in failing to advise them of the deportation consequences of his plea. As to the first, we think that Mayweather is binding on this Court and forecloses defendants' agreement. This Court held in Mayweather, applying the fair and just standard laid out in McTiernan and Davis, that where a defendant is aware of an issue and pleads guilty anyway, he cannot withdraw his plea because of that issue. And that is the circumstance we have here. Defendant knew that his wife asked his attorney, and his wife says, I asked his attorney, not just the public defender's office. And he knew that he had not received an answer from his attorney at the time he went to plead open to the indictment. The Court, during the plea colloquy, even asked him if he had any questions, and he did not raise this as a question. He didn't ask whether he had any questions about immigration or the effect of this deportation. He just said, do you have any questions. Correct. But I raise that to suggest that, one, it was a question that he obviously had. His wife had asked the attorney prior to his deciding to plead guilty. And also just to suggest that the Court, of course, gave the defendant the opportunity if he had wanted to take it to raise any kind of question he had, including this. Does it matter that Padilla specifically sets out an affirmative obligation by an attorney to provide a specific kind of information? I think just to make sure. As far as I know, there is no parallel affirmative obligation with regard to the question in May, whether that is whether to file a suppression hearing or not, a suppression motion or not. Well, I'd like to answer that in two ways. One, I think it's relevant to the ineffective assistance of counsel claim and to the question of whether the counsel was deficient. I don't agree with the Court that there's no parallel in. Which Court don't you agree with? Me. She doesn't agree with me. Yes. Judge Wardlaw. To the extent. It's not Judge Wardlaw. And it's not Justice Berzin. This is only plain old Judge Berzin. But moreover, I. I think that's what I said. But moreover, I didn't take a position. I asked a question. But go ahead. Right. No, I just mean to say, I do believe there is a somewhat parallel to the Mayweather situation. That is, a defense attorney does have an obligation to go over with the defendant possible defenses and things like that. And that is covered in the Rule 11 colloquy. So that suggests that there is. But Padilla seems to set up and seems to recognize that this is a special circumstance because the immigration issue is so important. It is probably more important than anything else about it, including the sentence. And the opinion essentially says that. So it's not at all clear that there are parallel obligations about anything else. Well, there's certainly. I mean, in the Rule 11 colloquy, there are certain things that the defendant has to understand and know before he can enter the plea. I think the point here is that this, of course, was before Padilla came down. It obviously applies. But it's that the defendant putting aside the counsel's deficiency as to whether it's something that could have plausibly affected his decision, the district court found that defendant was aware of the issue, knew he didn't know the answer and decided to plead open to the indictment anyway. Not, you know, pled open with no inducements to plead, with no time constraints on him, and that that suggested that it's not something that could have made a difference to this particular defendant because he. It might have suggested it, but he said otherwise. Right? In other words. Yes, but the district court was free to disbelieve that, which I think the district court did in making its finding. And this Court is bound by that finding where there is a basis to support it, and there is. There was a 14-month delay between the time the defendant found out that he would probably be deported and receive a new attorney before he even made the motion to withdraw. And the Court can obviously take account of that delay in determining whether the defendant's allegation now that it would have made a difference to him is credible. If. Yes. If the district judge had allowed Mr. Bonilla to withdraw his plea, would the United States have regarded that as error to be pursued in a court of appeals? I don't believe so, Your Honor. I mean, it's within the court had the discretion at that time to go either way. And the court could have, in its discretion, found that it's something that could have affected Mr. Bonilla's decision. Making different findings or the same findings? Well, he could have found that even though Mr. Bonilla's wife had asked his attorney and even though he hadn't yet received the answer, I suppose the court could have found his declaration credible as to his claim that it would have made a difference to him, and therefore could have come to a different conclusion. But similarly, the court was free to make the finding that it did in deciding that it's something that could not have affected the defendant's decision, and this court should not overturn that finding unless clearly erroneous. And the defendant hasn't even claimed that that was a clearly erroneous finding. I guess what I'm sorry. The question behind my question is this. I'm not quite clear what interest the government has in precluding Mr. Bonilla from withdrawing his plea and going to trial. Trials are sort of a favored way of finding out whether somebody committed a crime. That's true, Your Honor. But the government does have some interest in finality even when the plea is entered before sentencing. This Court has recognized that both in Rios Ortiz, where it said it's a fair and just. That's correct. But in terms of what the government's interest is, this Court has recognized the interest not only for the government but for the courts, too, in that finality, and that it requires the defendant to show the fair and just reason and not simply a change of heart. And here the court found there wasn't a fair and just reason, and Mayweather precludes a finding of a fair and just reason where a defendant is aware of the issue at the time of his plea and pleads anyway. Now, I think that there's some differences, but first I'd like to know where the judge said he was not telling the truth. The Court did not specifically say that in its finding. I was – I suggest that it's an implicit finding given that the defendant said I would have changed my plea and that the Court found that he didn't present a fair and just reason for withdrawing his plea. So I think we can infer that the Court believed that that was not in fact the case. Kennedy, the Court doesn't believe a person, and its primary reason for denying him something as important as withdrawing his plea, we might expect the Court to say that and not have you say, well, you can infer it, you can imply it, it's really there. You rely on the fact that the Court found that, and if the Court does find that, it's – Well, it's not all we're relying on, Your Honor. We're relying on the fact that the Court found he was aware of the possibility of deportation at the time he entered his plea and didn't bother to wait for an answer before deciding to enter the plea. That's a lot different from Mayweather, where he specifically knew about the motion to suppress and was told about it. And it was clear that they were not going to make it. No, I think – I think that's not true. I think it's very similar in that what Mayweather says is that where the defendant is aware of the prospect of making a suppression motion, that is sufficient to preclude him from being able to withdraw his plea based on the possibility of making a suppression motion. It didn't depend in any way on whether the suppression motion was meritorious, and the Court didn't even resolve the dispute between the defendant and his attorney as to whether or not the defendant said, I want to bring the motion, and the defense – and the counsel just failed to do so, or whether the counsel's version that the defendant said, no, it's okay, don't file one, was in fact the answer. I want to address briefly the idea that the district court somehow abuses discretion by not applying the correct legal standard, because I think the defendant implies that in his reply brief. I think the Court did apply the correct legal standard and so did not abuse its discretion in that regard, one, by saying that the defendant had no fair and just reason, indicating that it understood the standard. And while the Court didn't articulate the could-have-plausibly-motivated standard, it did apply that by focusing on the right question, that is, was the defendant aware at the time he entered his plea of the possibility of deportation, which was the task as set out in Garcia, quoted by this Court in McTiernan, and now affirmed in Mayweather. And in any event, even if this Court were to believe that the Court didn't apply the could-have-plausibly-motivated standard, this Court can affirm on any basis, that's what this Court said in Ortego, Ascanio, as well as Mayweather, and that there is a basis in this case. Defendant was aware of the possibility of deportation. He knew his counsel hadn't yet answered him. He didn't wait to talk to his counsel or even ask the Court for the opportunity to talk to his counsel before entering the plea. He opened he entered an open plea, so he was not induced in any way to plead guilty. He waited 14 months before bringing his motion. And it's an answer, even the correct answer to his question of whether he could  The 14-month delay was not relied upon in any way by the district court, right? The district court did not mention that, no, but it is a factor, since it's in the record and undisputed, that this Court could take into effect, could take into account in affirming the district court's decision. Why was he taking into account that we're doing an abuse of discretion review and the district court didn't rely on it? Yes, because this Court can affirm on any basis supported by the record, and the fact of the delay is in the record. Not when we're reviewing for abuse of discretion. It doesn't make any sense. In other words, we want to know what he did and say, was that an abuse of discretion. If he didn't consider this, then why would we consider it? If you believe that the district court abuses discretion by applying the wrong legal standard, then I think the court can look at the whole record and determine whether the district court's decision was still correct, even under the correct legal standard, and that's what Ortego-Escanio specifically, that that court says that. Kennedy, is the government's position that Mr. Bonilla, at the time he entered a plea, didn't care whether he was going to be deported or not? Is it our position that he didn't care? I mean, I don't think we're taking a position on that. I think what we're taking a position on is his conduct shows that it didn't make a difference to him in determining whether he should plead guilty or not, because he went ahead and pled guilty, even though he knew he didn't know the answer to that. So therefore, it couldn't have been something that would have changed his mind or else he would have waited for the answer. Yes. You know, the district court in Mayweather found that he manufactured the reason for his request to withdraw his plea, and that he simply changed his mind. This case doesn't seem to be similar. Well, I think Mayweather specifically distinguished McTiernan and said that in that – in Mayweather, there wasn't a fair and just reason because the defendant was aware at the time that he entered his plea that he could have brought a motion to suppress, and therefore, the motion to suppress couldn't be the basis. And, of course, the Court may have believed that defendants claimed that the reason he wanted to withdraw his plea was to bring the motion to suppress. It didn't believe him, just like we believe the district court here could not have believed the defendant. Well, that's what I'm saying. The district court here said he simply changed his mind and manufactured the reasons for his request to withdraw his plea. We don't have that kind of a finding here. But you don't need to have that kind of finding. The district court relied on exactly what Mayweather initially says it was relying on, that was that the defendant knew about the issue at the time, so he could not have. In Mayweather, he knew that the consequence was not that there would be no motion to suppress, and he deliberately gave up the motion to suppress. Here, the defendant did not know anything about the effect of the plea on deportation, even though he had asked. But he knew that it could affect the deportation, his immigration status. He didn't even know that. He only wondered. He asked and got no answer. He didn't know anything. Well, the very fact that he asked suggests that he knew it may have an impact. No, it just suggests that he doesn't know anything about it. That's why he's asking. Well, I think that that's certainly a reasonable interpretation for the district court to believe that where a defendant knows that they're not a citizen, knows that they are now convicted, knows that they could be convicted of a felony, that the question of whether that's going to affect his immigration status is. And I knew that I had committed a felony before, and I wasn't deported. So in the absence of any information to the contrary, I figured it was still the same. That's what the defendant claims. What I'm saying is for the district court to believe the defendant was aware of the possibility that he could be deported is a reasonable finding for the district court to make, and to make based on the fact that the defendant had at least bothered to ask whether it would affect his immigration status. And while this court or a different court may have come to a different conclusion from the fact that he asked and would have been free to say, oh, just the fact that he asked doesn't mean that he was aware it could have an impact, the district court was similarly free to find the opposite, that the very fact that he asked suggests that he knew it could have an impact, and that is sufficient to put him on notice before that he might not want to enter his plea until he has an answer to that question. There is some ---- Scalia, way over the time. Thank you. I could just briefly address the Court. I'm moving these things so that I can be heard. Your Honor, I just wanted to ---- I think we should be fair to the district court. The district court issued its decision at pages 67 and 68 of the trial record. The district court relied upon a number of different things in making its decision. First, it found that under the applicable Ninth Circuit law at that time, the defense attorney was under no obligation to advise as to immigration consequences. Secondly, it noted that the district court itself was not obligated to voir dire or to ask about immigration consequences. Those two findings are true prior to Padilla. Padilla destroys and or severely abrogates that authority. The third issue in the district court's decision at page 68 was how was it that Mr. Padilla was prejudiced. As we argue extensively in the briefs filed before the Court, we do not have to demonstrate that there was a report, excuse me, a pre-sentence plea. Prejudice is not necessary. My point simply is that a change in the law, as we argue in the briefs, constitutes if a district court bases its decision on the previously existing law and it's been changed, that constitutes an abuse of discretion. It also explains the 14-month delay, does it? No, it doesn't, Your Honor. The 14-month delay, how I counter that is that there's nothing in the record which really takes care of the 14-month delay that was not addressed in the record itself. It was clear that I was appointed at that time for the purposes of the withdrawal of the plea issue. And, I mean, if the Court wants a declaration, there's nothing in the record on the 14-month delay, but I think there's a number of things that exist. When was the motion to withdraw the plea made? The motion to withdraw the plea was made approximately 11 to 14 months after I was appointed. I do not recall the precise dates. But it was before Padilla came in. Yes, Your Honor. Oh, yes. The issue, the issue with regard to the delay is, I believe, I was originally appointed because of a conflict which developed because the public defender had not discussed this matter. I got involved in the case after that and was appointed by the Court. And there was no – the sentence still had not been handed? Oh, no. No, Your Honor. The sentence – What was the explanation for the delay in that? There were a number of explanations, but they aren't in the record. I can go through them. All right. It just seems to me a very long time between the plea and the sentence. Some of them had to do with other cases I was in. Some of them had to do with investigation. All right. Thank you. Thank you, Your Honor. If you'll start, you will be submitted.
judges: Pollak, Reinhardt, Berzon